# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 21-1017**                                                    **September Term, 2022**

FILED ON: FEBRUARY 17, 2023

VSS INTERNATIONAL, INC.,
                  PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
                  RESPONDENT

---

On Petition for Review of an Order
of the Environmental Protection Agency

---

Before: KATSAS, WALKER and PAN, *Circuit Judges*

## J U D G M E N T

This case came before us on a petition for review of an action by the Environmental Protection Agency. After considering the issues, we have determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **DENY** the petition for review.

\*     \*     \*

For a century, VSS International and its predecessor companies have pioneered the use of asphalt emulsions on roads. Today it stores asphalt about 200 feet from the Sacramento River Deep Water Ship Channel. That facility counts as an oil-storing facility, and the Channel has been identified as a "fish and wildlife and sensitive environment[]." 40 C.F.R. § 112.20(f)(1)(ii)(B); *see* JA 85.

Under EPA regulations, some oil-storing facilities must create and submit a Facility Response Plan, which is designed to prevent or mitigate damage from oil discharges. 40 C.F.R. § 112.20(a), (h)(3)(i), (h)(7)(i). A Response Plan is required for any onshore, oil-storing facility that, "because of its location, could reasonably be expected to cause substantial harm to the

1

environment by discharging oil into or on the navigable waters or adjoining shorelines." *Id.* § 112.20(a).

A facility could "reasonably be expected to cause substantial harm" if:

(1) it has a "total oil storage capacity" that is "greater than or equal to 1 million gallons"; and

(2) it "is located at a distance . . . such that a discharge from the facility could cause injury to fish and wildlife and sensitive environments."

*Id.* § 112.20(f)(1)(ii), (f)(1)(ii)(B).

An administrative law judge and the EPA's Environmental Appeals Board found that VSS's facility satisfies both requirements.

VSS petitioned this Court for review, challenging the agency's decision on the second requirement.

\*   \*   \*

VSS challenges two findings by the Board regarding the second requirement: (1) that a worst-case discharge from VSS's facility would reach the Sacramento River Deep Water Ship Channel, and (2) that a worst-case discharge could injure the environment.

Both of those findings are supported by "substantial evidence in the record." 33 U.S.C. § 1321(b)(6)(G)(ii).

First, the ALJ relied on "modeling evidence in the record" from the EPA's expert, Bill Michaud, which showed "that portions of a worst-case discharge from the Facility would in fact reach the Channel." JA 84. For three reasons, the ALJ credited Michaud's testimony over testimony by VSS's expert: Michaud used more sophisticated modeling; Michaud had more relevant experience and education; and the analysis by VSS's expert included a basic math error. *See* JA 83-84, 127, 131-32, 158. In other words, the ALJ decided to credit the more sophisticated analysis done by a more qualified and experienced witness, whose reliability was not undermined by an error. The Board affirmed the ALJ's "thorough, careful, and persuasive" analysis. JA 36.

That decision was reasonable and supported by substantial testimonial and documentary evidence. And because the agency "is obviously best situated to assess the credibility and demeanor of witnesses, this court must defer to that judgment so long as it is reasonable." *Carstens v. Nuclear Regulatory Commission*, 742 F.2d 1546, 1553 (D.C. Cir. 1984).

Second, the ALJ found that a worst-case discharge could cause "injury" to the Channel.

2

JA 86; *see also* JA 37-38 (affirmed by the Board). The regulations define "injury" as "a measurable adverse change . . . in the chemical or physical quality or the viability of a natural resource resulting either directly or indirectly from exposure to a discharge, or exposure to a product of reactions resulting from a discharge." 40 C.F.R. § 112.2.

Here again the ALJ credited Michaud, who "concluded that because the Channel is itself a fish and wildlife and sensitive environment, it could be injured as soon as a spill reaches the water." JA 85; *see also* JA 37-38 (affirmed by the Board). Michaud also determined that a worst-case discharge from the VSS facility would travel at least 22 miles downstream. *See* JA 129-32, 334. From there, the ALJ connected the dots: If a spill could cause injury as soon as it reaches the water and will travel at least 22 miles downstream, then the discharge could cause injury. JA 85-86; *see also* JA 37-38 (affirmed by the Board). That conclusion was reasonable and supported by substantial evidence. *See* JA 138.

Because the Board's decision was supported by substantial evidence, we deny the petition for review.

\*     \*     \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

## **Per Curiam**

                                               **FOR THE COURT:**
                                               Mark J. Langer, Clerk

                               BY:    /s/
                                               Daniel J. Reidy
                                             Deputy Clerk